Mr. Gennatempo, I hope I said your name correctly, sir. That's appropriate. That's the correct name. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Alan Gennatempo. I represent the appellant, Ernest Pizio, and I would like to reserve five minutes for my rebuttal. Your Honors, in this case, which is an appeal of a dismissal of a matter before the district court that originated in the EEOC, the appellant makes two arguments in support of this appeal. The first argument is that the charge, although not signed on January 25, 2008, it was signed 13 days later on February 7 of 2008, was a timely filed charge within the meaning of 42 U.S.C.A. 2000 E-5 and 29 U.S. Section 626. And we rely very heavily in our brief and obviously in the case on the Holowicki case, FedEx v. Holowicki, the Supreme Court case, that acknowledged that the word charge is somewhat ambiguous and that the EEOC questionnaire could be considered a charge if filled out in such a way that it conveyed to the EEOC a request to take remedial action. So even if we assume that the questionnaire is a charge, Mr. Gennatempo, the questionnaire checks one box, age. It doesn't check national origin. The only hint about national origin is the names of the people perhaps who your client claims are treated differently. How do you get, assume for the sake of this discussion right here, that we accepted that the charge, that the questionnaire was a charging document and your age discrimination claim made it under the wire? How does your national origin claim survive the statute? Your Honor, I think there's two reasons or two ways that it absolutely does. One, there is a reference in the initial charge as to the national origin of the other two gentlemen that my client claims were given preference over him of their Indian descent. It was an Indian company, owned by an Indian company and run by Indians as executives. You said in the charge, the actual charge that was filed 313 days later? Yes, Your Honor. The questionnaire was filed in November of 07, well within the 300-day period. But you're mentioning the charge which relies beyond the 300 days. Yes, Your Honor. And I can explain why we believe that that is still appropriate under the circumstances. It's not a statute. Setting aside the equitable tolling, all right? I'm not even, yeah, I won't go there yet. Setting aside the equitable tolling, just focusing on the questionnaire. What is it you point to in the questionnaire that would allow us to apply Holowecki in a way that we could say, oh, this is an effort by Mr. Pizzio to activate the mechanisms, so to speak, for a national origin claim? I know we've attached the actual questionnaire to our papers. Right. I'm looking at it. It's page 57, et cetera, in the appendix. Of the appendix. Yes, Your Honor. I would acknowledge in terms of the questionnaire that what was checked off was age. What I'm relying upon are two different things, not necessarily what's in the intake questionnaire. Number one is if you look at the actual charge that was signed on February 7th, it clearly delineates the issue of national origin. So clearly that the EEOC had it in there. Yeah, okay, but that had to, well, in order for that to be in the charge, we'd have to accept equitable tolling, wouldn't we? I mean, if you're relying on the questionnaire to be separate and apart from equitable tolling, standing on its own, would you acknowledge that it doesn't invoke national origin? I would absolutely acknowledge, Your Honor, that with regard to the national origin claim, the equitable tolling argument really more applies to that. Okay. Because that, I think, is less clear in the questionnaire, in my mind, and what was presented prior to the February 7th date. I would absolutely acknowledge that. The other, the case law also, and there's a case that came out of the district court that was not brought up on appeal, the Walker-Robinson case, which we cited, and I know that it's not binding on this court, of course, but it does reference the Jones case that was a Third Circuit case that talked about the EEOC has somewhat broad powers to include other claims that they believe are reasonable or form the basis of discrimination. They're not limited strictly to the contents of the intake questionnaire in terms of framing the actual issues. And, again, the underlying reason for the EEOC is to make sure that employees are dealt with fairly, and so they're given somewhat broad powers when it comes to those particular issues. So from my perspective, Your Honor, my answer to your question is that that also provides a second reason why we believe the national origin case would survive the EEOC filing date. I apologize for being obtuse, but you may have to restate that for me. It's because the EEOC is an important enforcement mechanism and they were thinking about it? Am I saying it back to you right? No, maybe I misspoke, Your Honor. What I meant was that the purpose of the EEOC is obviously to help employees who are the subject of discrimination or subject to discrimination, and they have broad powers to expand the claims beyond the intake questionnaire if they believe that there's a basis for it. And what I'm saying is even though that the charge was filed on the 7th or signed on the 7th, and that became one that they believed was also a viable claim, and they ultimately determined that there was a violation. Do you have a case that says statutes of limitations don't apply if the EEOC adds something else? I'm looking at... That would be a significant change in the regulatory structure, wouldn't it? I think it would. And I think that, again, this isn't particularly a statute of limitations like filing of a lawsuit is a statute of limitations, as is discussed in many of the cases. There are times when you can supersede the date that the filing should have been made. But citing to Howe's H.O.W.Z.E. versus Jones and Laughlin-Steele, which was a Third Circuit opinion, 1984, 750 F. 2nd, 1208, which talks about district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges, and if a reasonable investigation by the EEOC would have encompassed the new claims. Well, when you say if they're reasonably within the scope of the original claim, that kind of takes us back to the questionnaire. But I take your argument. Can you talk about equitable tolling for a minute? Yes, Your Honor. How do you... We seem to have construed this pretty narrowly, that it takes genuinely extraordinary circumstances to invoke that. What makes this case extraordinary in warranting equitable tolling? Well, I think one of the issues, Your Honor, in equitable tolling is the waiver, the waiver issue which is contained in the cases that we've cited. There can be a waiver by the defendant. This matter lasted a year in the EEOC in terms of conciliation and negotiation, from January to January of 2009. During that time, the defendant never once raised an issue that there was an issue of the filing date of the charge. And clearly the cases say that you can have, referring specifically to the Buck case, which we cited and which was referred to in the Holowicki, or reference to Holowicki case, stated that a defendant waives the right to question the verification of an EEOC charge if it isn't raised during the EEOC investigation. And finally, Your Honor, I think the issue of, maybe it goes to my first issue, I think the circuit court made certain, I'm sorry, the district court made certain factual findings, without a hearing, without testimony, as to who was telling the truth about the adjournment or the rescheduling of the date. I mean, I just think that the purpose of what the statute is there for, to protect employees, and I understand the case law talks about extraordinary. Let me tell you why. They wouldn't have anything to raise until it was already too late, because what would they have to do? Tell them after 280 days, hey, your time's running out? I mean, what would be there to be raised? Even if they had some duty to raise, why would it be triggered yet, because the time hadn't run? I understand that, Judge, but we're talking about equity and equitable tolling. If you look at the document we also submitted, which, and I dispute the EEOC's recollection of what actually happened. We have a factual dispute there. Clearly, it indicates that on January 14th, before the date he was supposed to be there, he called to reschedule, and they gave him the February 7th date. Now, my client's not in a position to tell the EEOC what they have to do, and it says that they agreed to that date. So your client, when you say there's a factual dispute here, I think everybody agrees that the EEOC is, they don't have a dog in the fight, so to speak. We would hope they are, and I think both sides seem to agree they are dispassionate. They're just trying to do their job, and they've got a regular orderly way of doing business, and their regular orderly way of doing business for this person was to note things contemporaneously, and his contemporaneous notes show that your client called, your client asked for the delay, your client got the delay, and the burden of proof for laying the foundation for equitable tolling is on your client. So if we've got contemporaneous records from an unbiased third party that shows he's the one that made the request, how does, how do we end up with a factual dispute that you can win? Because, Judge, I think that in the EEOC, they talk about it in Holowiki and Hollander, that the EEOC gets 175,000 complaints a year. We've got contemporaneous notes. But I don't, I disagree completely, Your Honor, that factually that note is dispositive of that issue. Mr. Dutt testified, he had no recollection of Mr. Pizzio personally. He was, he has thousands of pages of notes of things he keeps. Right. That's why notes are important. I know, but it's a note, Your Honor, that someone wrote that he wrote, obviously, but it's something that happened years before he testified, and frankly, you know, and maybe my last statement, I know I'm out of time, and I apologize, is the Miller case that we also cited. And it talks about equitable tolling is proper when the principles of equity would find rigid application unfair. So that's what our basis of the equitable tolling is. Okay. Hold on, wait a minute. Sure, I'm sorry, Your Honor. Oh, I want to just ask you a couple of things. Suppose we decide there's a dispute of fact, we remand it. Nobody briefs the question of who decides what the dispute of fact, what the fact is. And then the question is, is it a jury or a judge that decides it? It's not briefed. Then the question is, equitable tolling involves more than a resolution of the facts. It involves a weighing of circumstances, and usually a judge would do that. So when you want us to remand this matter, who do you want us to remand? Well, we remand it to the district court officer. But what should happen then? What kind of a hearing would it be? Would it be a jury trial? Who would finally decide if it was equitable tolling? Judge, let me make clear my one point on that to answer your question. I don't think it really matters. I think it's irrelevant, the factual issue as to who adjourned or who rescheduled the meeting. Our position is clear that a charge had been filed before the date. I understand that, but let's assume we reject that. Then I think the district court judge should have had at least a hearing, a hearing with regard to the witness, either Mr. Dutton, my client, and to assess credibility. And I think that... A judge would decide it? I think a judge could decide it. I have faith that the judge can rule on credibility of a witness. Well, I want to... I mean, in that scenario I'm talking about. I one time had a case where a judge granted summary judgment in a non-jury trial. We said there was a dispute of facts, and guess what happened on the remand? I just got reversed, Judge, on an appeal on the same issue. We remanded it. It was a non-jury trial. I just got reversed on the same issue, actually. But anyway, the question, though, is this. Who then decides? Okay, the judge decides, yeah, you're right. The EEOC adjourned it. Okay. He contradicts himself. Who then does the judge then make... Or suppose a jury would decide it. Would the judge decide that doesn't necessarily mean there would be equitable tolling? Who decides that question? I think on a limited issue the district court judge can rule on that decision. And if I can remind you, there were two motions before an answer was even filed, 12B6 motions, to dismiss on the issue of timeliness, which were both denied by the same judge. And I don't think the facts really changed other than he got a portion of a deposition and a note and said, okay, now I can rule on that. And I don't think that that's reasonable if he was basing his decision on a factual determination. I just had one other thing I wanted to ask him. When the questionnaire was filed, you say that the questionnaire operated as a charge in itself, and that was well within 300 days. Okay. Does it happen sometimes, and you may, I don't know if this is the field you work in, but does it happen sometimes that there's a questionnaire filed, there's then a meeting, and at the end of the meeting the employee says, you know what, I don't have a case, and there's never a charge? Does that happen? Yes, Your Honor, absolutely that happens. It happens on many occasions. I'm not saying it doesn't. I think what I laid out in our brief is the efforts my client made to put his case before the EEOC, hired an attorney in the midst of it. That attorney sent a letter to the other side. There was a charge number. You have the facts. I don't need to repeat them, I'm sure. But they acknowledged receipt of the charge and that they were going to defend it. There was never once a mention about it, ever. And I think that that's important to the argument. That's all I have. Thank you, Your Honor. Thanks. We'll have you back on rebuttal, Mr. Tintempo. Ms. Lopez. I'd like to start with addressing plaintiff's intake questionnaire that he filed on November 15, 2007. First of all, it's undisputed that the charge that he filed on February 7th was late, and the intake questionnaire that he filed we submit does not meet the two-prong test that the Supreme Court laid out in Holowicki in order to qualify as a charge. Can I have you look at that questionnaire for just a moment? Sure. And look at the last page. It's page 60 in the appendix. And if you'll look down, it's got a series of numbered statements at the bottom of that page. And number three says principal purpose. You see what I'm looking at? Yes, I do. And it says in the second sentence there, when this form constitutes the only timely written statement of allegations of employment discrimination, the commission will, consistent with 29 CFR 1601, et cetera, et cetera, consider it to be a sufficient charge of discrimination under the relevant statutes, unquote. So if the questionnaire by its terms can be, and it's putting everybody on notice that this can be a charge, why shouldn't we look at this and say it's a charge? Everybody knows these questionnaires can be a charge. It says it right on the form. Well, the reason is because it says here consistent with 29 CFR 1601 and 29 CFR 1628.6. And the Supreme Court in Holowiki had to wade through the various regulations that the EEOC had put in place in order to come up with a definition of what is a charge covering a discrimination claim under the ADA when the only timely document is an intake questionnaire. And it was in Holowiki that the Supreme Court held that merely complying with the regulations and providing the information that's required in the regulations is not enough. They included the second prong, which requires that the contents of the intake questionnaire be reasonably construed from the standpoint of an objective observer. Okay, so how would an objective observer, seeing that this man is complaining, I've got an age discrimination claim, not understand that to be what he's saying? I want you, the EEOC, helping me out. They discriminate against me on the basis of my age. What's unclear about that? Because intake questionnaires and the EEOC serves two functions. One is to provide information to the public and also to carry out enforcement mechanisms. And as the Supreme Court noted in Holowiki, out of the 175,000 questionnaires that are filed annually, less than half of those actually become charges. Okay, well, I guess what I'm trying to ask you is, not general statistics, but what is it in the questionnaire that you think makes it less than something that could reasonably be construed as a request for the agency to take it online? Because all Mr. Pizzio provides in the questionnaire is responses to the questions asked and a brief statement of what acts he believes constitute discrimination. Nowhere in the questionnaire is he asking for any sort of remedy, nor is he asking for the EEOC to take any action. Unlike the questionnaire that was before the Supreme Court in Holowiki, which was accompanied by a six-page affidavit wherein the – If you had to have an affidavit to make a charge, a questionnaire into a charge, don't you think that paragraph three that we just read from it would say, if you append an affidavit or if you give us some additional information? It doesn't. If this is the only timely filing, we can treat this as a charge in essence. I agree. I don't think you need to have an affidavit, but I think you need to – you can expand in this box in response to question number five and add information as to what relief you're seeking. Mr. Pizzio could just have been trying to speak – find out whether his claim actually would constitute discrimination and could have been just seeking information. There's nothing in these three pages, four pages, that an objective observer could find to be a request for the EEOC to take action. In this case, the EEOC did not take action. The EEOC scheduled an intake interview for him to come in and then file a charge. Well, that would be – that's the ordinary course, isn't it, when they've got a questionnaire? I mean, it's not that this automatically constitutes a charge. It's that it can be treated as a charge, right? I mean, you wouldn't have expected them to treat this as a charge in the – you know, that it would instantly be a charge. The ordinary course of things is to have an intake interview and to have a discussion, right? It's part of the procedure, but it's not always the case. And Mr. Dye testified in his deposition that if an intake interview is scheduled, it's because it's necessary. And as you can see from the intake questionnaire and the charge that was actually signed on February 7th, there's information in that charge that's not included in the intake questionnaire, namely the national origin claim. Clearly, there had to have been discussions or something that happened between November 15th, 2007 and February 7th, 2008 that led to that. Sure, but that's a different issue, though. I mean, that's an issue of what is the scope of the claim that can be presented here, what's the scope of the timely claim, as opposed to whether a charge of age discrimination has actually been submitted. So why don't you address the question of assuming this would constitute a charge, what is properly before us? If the intake questionnaire were to be considered a charge, then what's before you is solely his age discrimination claim based on his termination. His failure to promote claim, his wage discrimination claim, and his national origin claim should be dismissed. One, they weren't included in the intake questionnaire, and they all occurred more than 300 days before he filed the intake questionnaire. But I would like to point out that the plaintiff in Holowicki actually was arguing what Mr. Pezzio's attorney is arguing now, which is that all intake questionnaires should be deemed charges and that merely complying with the regulations set forth by the EOC in 1626 should be enough. And the Supreme Court stated, and if you don't mind, I'll quote from the case, that for efficient operations and to affect congressional intent, the agency requires some mechanism to separate information requests from enforcement requests. Respondents propose standard that a charge need contain only an allegation of discrimination in the name of the employer falls short in this regard. Were that stripped down standard to prevail, individuals who approach the agency with questions could end up divulging enough information to create a charge. Right. Now, I don't understand Mr. Genetempo to be saying that all questionnaires are ipso facto charges. I understand the position to be this questionnaire is a charge. It tells you I'm making an age discrimination claim. I was terminated for not attaining a sales goal. Two other people with the same position as vice president of business development were not fired. And, you know, I guess I'm not hearing the other side make some broad all questionnaires are charges claim, but that this is enough. Assume that it is enough. Perhaps you could describe why your arguments about all of this are not waived as has been argued by the plaintiff. Okay. Well, I believe that, A, he has not provided any authority to say that a waiver of a timeliness issue or, I'm sorry, failure to raise timeliness issue with the EOC constitutes a waiver. The only case that he relies on, which is Buck v. Hampton, dealt with an unverified charge. And the reason that that differs is because an unverified charge under the EOC's regulations, you can amend a charge, it's considered a technical defect, and you can amend a charge and cure those technical defects while the EOC proceedings are pending. In that case, the defendant never, the employer never asserted the verification defect and waited until the action was filed in federal court and the EOC proceedings had ended and the plaintiff no longer had the opportunity to cure that defect. In this case, you know, plaintiff filed a non-timely charge. Whether or not the HCMT raised that issue before the EOC, it was too late for him to go back and fix that. That couldn't be cured. And not to mention that the filing, the timely filing of a charge, is a prerequisite to bringing an action to federal court and therefore we think the appropriate venue for raising that defense is in federal court and that's what we did in this case. So if you didn't consider this a charge, why was it called a charge in some of HCMT's correspondence? Because there is correspondence in the record where it's by HCMT people it's referred to as a charge, right? Am I remembering that correctly? Plaintiff's attorney sent a letter to HCMT saying that plaintiff had filed a charge with the EOC. HCMT took plaintiff's letter at face value and then eventually in February they did receive a notice of charge from the EOC. So it was plaintiff's attorney that misstated the nature of the filing and hence HCMT responds to that. But the EOC proceedings are administrative proceedings that focus on conciliation and are not binding. So their waiver or their failure to assert that defense before the EOC does not prevent them from asserting it now. And other jurisdictions or circuits that have considered this issue have held that failure to raise that defense before the EOC is not a waiver to assert that defense in federal court and I apply it to this case in my brief. If we think the equitable distribution, the equitable tolling claim depends in part on why this original meeting was postponed and we remanded for that purpose, who makes the finding of what happened? A court, a judge, when I say a court I mean a judge or a jury. And then who makes the finding as to what, now that's just a fact. Now that still might not mean that there's the equitable tolling. Who makes that finding? Well, I believe that the judge would be the one to make that finding but I don't believe that there's a hearing necessary in this case. First of all... Both findings, the factual finding and then the question, the exercise of equitable principles. Because it's not briefed. Yes, it's not briefed. I believe the judge could make that finding in both instances but I guess the jury, since it's a factual issue, could also make the initial determination as to resolving that alleged issue of fact. But I don't believe there is an issue of fact here. I believe that the affidavit that was submitted alleging that Mr. Pizzio canceled... I'm sorry, alleged by Mr. Pizzio that the EOC canceled the interview is just a mirror of the allegations that were made in his amended complaint and is the same affidavit that he submitted in opposition to HTMT's pre-answer motion to dismiss. It's just a bunch of generalized allegations that are unsupported by any evidence. While it's true that the district court dismissed or denied our initial motion to dismiss, the district judge noted that he thinks it's more appropriate to be considered in a summary judgment motion assuming that all discovery would be completed and additional evidence would come out either to support his position or to further support HTMT's position. And after discovery, Mr. Pizzio still failed to support his claim that the EOC canceled the interview with any factual support. Meanwhile, HTMT was able to submit the affidavit of the area director that was signed in 2009, not that long after the filings were made, indicating that Mr. Pizzio canceled the interview. The testimony of the investigator with whom he spoke with testifying that Mr. Pizzio canceled the interview as well as the contemporaneous notes that he took during that time. So all of that evidence, in light of Mr. Pizzio's general allegation that the EOC canceled, is... No hearing was needed is your point. There's no hearing. But let's assume that Mr. Pizzio's statement is accepted as true. Inherent in the application of the equitable tolling doctrine is whether or not he exercised due diligence in preserving his claims. And he clearly did not exercise due diligence in this case. His deposition testimony, his interrogatories, all state that he believed that he was being subject to discrimination as early as 2005. That he consulted an attorney in 2006. That he was told multiple times that he was too old to be promoted in 2006. And yet he waits eight months until after he was terminated to first contact the EOC. And there's a well settled case law that if a plaintiff sits on his rights and fails to take action to preserve his rights, he would not be entitled to equitable tolling. In this case, he sat on his rights for three years and now wants to blame the EOC for allegedly canceling one interview for not meeting statutory time limits. When he had ample opportunity to do so. I have in my mind that what happens is if the case is going to go ahead when this initial interview is held, that it's the practice at that point to file a formal charge right then and there. Well, that's one form of doing it. Also, if he realized he was running out of time, he could have contacted the EOC and mailed it in. And in this case, he had an attorney who provided him with letter of representation. Notifying him of the statute of limitations, what the consequences were, and what the filing date was. And in actuality, the filing date given to him by his attorney was January 18th. Yeah. And he, when the actual date was January 25th. He had all this information, yet either he canceled the interview, the EOC canceled, but he took no effort to either try to reschedule earlier or to go down to the EOC or to see if he could file it by mail. Okay. Thank you very much, Ms. Lopez. Thank you. Mr. Tenetempo. Your Honors, I'll be very brief. I disagree completely with the last set of statements made by counsel. I think that as a layperson, even though he had retained an attorney, he was dealing with the EOC as a layperson. Cases talk about the standard when that happens. But I want to be clear. How would your assertions of discrimination with respect to promotions and unequal pay be timely? Because our position, Your Honor, is that his request to be promoted existed up until the time that he was terminated. That he had been constantly contacting Mr. Varadin. But there are discrete dates when promotions are made, are there not? No, because they claim they had left the position open. He wanted to be considered for it. And he believed he was the most qualified for that position. But they never filled it. How is there an adverse action? Well, ultimately, in the discovery, we realized they did fill it with someone else. I'm not being misunderstood, but I thought there were two openings and that he put himself in for both of those, didn't get them, and conceivably a third when the, what is it, Athenian or when that? Athena, correct. Right. But each of those is a discrete event. They are. But, Your Honor, Athena was an acquisition by HTMT that my client worked for for over 20 years. He knew the company very well. That's why he believed that he was best trained in place to be the sales manager when that group came into HTMT. But he didn't file a charge within 300 days. I would acknowledge, Your Honor, that the charge, the initial charge, the reclaimed charge, the questionnaire, does not talk about promotion. I would acknowledge that. One last thing I wanted to say on the dates. I hope I didn't screw up the dates, Your Honor, on that one note that the EEOC wrote. And, again, I think it's relevant. January 11th was the date that they said they got a message from my client to reschedule. January 14th was the date my client spoke to them to reschedule, which was 11 days before the required date, and he was given a date of February 7th. I just want to make that clear. I don't know if it makes any difference to Your Honors, but. Can you respond to the general statement that Ms. Lopez made that he felt he was being discriminated against for years and years and years, and he doesn't file his charge until after his termination, and then eight months after his termination, and how, or his questionnaire. It's not something that should evoke the equitable sympathies of the court. It's sort of her pitch, as I understand it. What's your response to that? Judge, my response is it's irrelevant as to, as long as the complainant, the plaintiff in this case, brought his claims to the proper authorities within the time frames allowed by law, which is what our argument is. He can't be held responsible. He can't be blamed for not going the first month he was terminated. Employees get shocked after they're terminated. They don't know what to do. You start looking for work. Maybe you're going to find a job right away, and you don't need to sue the employer. When he got to eight or nine months, he didn't have a job at his age. I think that's when he realized he better do something. So I don't think that that argument carries any weight when it comes to blaming my client, and I don't think my client should be blamed. And I'm not blaming the EEOC. They have a very difficult position. They handle thousands of people a month, I know, because we deal with them. But in this situation, I think it's, my argument is still that it's irrelevant, Your Honor, as to who's canceled what. They all did this in good faith. They believed they were doing this properly. He can't mail in a charge. They give him the charge to sign. He doesn't have the right to mail a charge in. He doesn't have a charge. In other words, a formal document. Even the charge itself only concerns the termination. No, Your Honor. It actually has the national origin in it. Well, yeah. But the adverse action is the termination, not the failure to promote, not the unequal pay. I concede, Your Honor. All right. Okay. Thank you very much, Mr. Chairman. Thank you for your time. Appreciate everybody's argument. We'll take a short recess before we hear our last.